RANCHO SANTA FE ASSOCIATION, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 83–0547–E(I).

United States District Court, S.D. California.

Jan. 31, 1984.

David R. Clark, Aylward, Kintz, Stiska, Wassenaar & Shannahan, San Diego, Cal., for plaintiff.

Nancy Morgan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

This is an action for refund of federal income taxes paid under protest in the amount of $313,927.00 by plaintiff Rancho Santa Fe Association, Inc. (hereinafter referred to as "Association"). Plaintiff seeks a refund of this amount as well as a declaration of plaintiff's tax exempt status under Section 501(c)(4) of the Internal Revenue Code of 1954, 26 U.S.C. § 501(c)(4) (1976). The Section 501(c)(4) exemption is available to civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare.

Rancho Santa Fe is a large, self-contained housing development located just north of San Diego. The Association was incorporated as a non-profit cooperative association on July 4, 1927. On July 9, 1942, plaintiff was granted exempt status pursuant to the predecessor of Section 501(c)(4); this applicability of exempt status to plaintiff has been reaffirmed by the Internal Revenue Service (hereinafter "IRS") three times since the initial determination.

Despite the absence of any intervening change in either the statutory language or the operation of the Association itself, on May 9, 1979 plaintiff's exempt status was revoked by an IRS determination letter. The reason for this revocation was stated to be that:

[The Association was] not operated exclusively for the promotion of social welfare since all of the common areas and the facilities [the Association owned and maintained were], not open to members of the general public for their use and enjoyment.

As a result of this revocation, the Association paid corporate tax under protest for the fiscal years ending June 30, 1981 and June 30, 1982, and filed a timely complaint in this court seeking review of the IRS determination that plaintiff is not exempt and the IRS denial of plaintiff's request for a refund.

Defendant presently moves this court for summary judgment in its favor; plaintiff cross-moves for summary judgment, as well.

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at the hearing, and for the reasons set forth herein, the court grants plaintiff's motion for summary judgment.

## FACTS

The following facts about the Association and Rancho Santa Fe are relevant to the disposition of these motions. The Association exists to enforce protective covenants designed to preserve the character of the community of Rancho Santa Fe. It is a homeowner's association consisting of about 3,000 members who are property owners within the Rancho Santa Fe development which is governed by the protective covenants. The property contained in the development consists of 6,100 acres. The Association owns 600 acres outright; the remainder is property owned by the individual members. Of the 600 acres owned by the Association, 300 acres are dedicated to parkland and open space, 165 acres are improved as playgrounds, athletic fields, a public parking lot, a community clubhouse, and hiking and bridle trails. The remaining 135 acres comprise an 18-hole golf course and eight tennis courts.

The Association oversees the governance of the property within the development by enforcing the covenants and setting up various boards, including a planning board, a park board, a health board, a library board, and a recreation board. The Association also furnishes private security protection by way of the Rancho Santa Fe Patrol. In addition, the Association functions as a liaison between the community and the Board of Supervisors on issues which require the participation of larger governmental enti-

ties, such as maintenance of the rights-of-way and the sanitation system. Finally, the Association serves the community in loaning out its facilities free of charge to various public service organizations as well as to the schools.

Of the lands directly under the ownership of the Association, the parklands and open space, playgrounds and athletic fields, public parking lot, community clubhouse, and the commercial areas are open to the public. The golf course and tennis courts are less freely accessible; they may be used by the general public only to the extent that members of the public are guests of the privately-owned Inn located in Rancho Santa Fe, otherwise only members of the Association may use these facilities.

In sum, out of the 600 acres owned directly by the Association, 465 of these acres are available for use by the general public on an unrestricted basis. The remaining 135 acres are available to all the members of the Rancho Santa Fe community and to the general public, but only when the public uses the inn located in Rancho Santa Fe.

## DISCUSSION

This case presents the issue of whether the Rancho Santa Fe Association is an organization operated exclusively for the promotion of social welfare such that it is exempt from federal income tax under Section 501(c)(4) of the Internal Revenue Code of 1954.

Section 501(c)(4) provides in pertinent part:

(c) *List of Exempt Organizations.* The following organizations are referred to in subsection (a) [i.e. organizations exempt from federal income taxation]:

.  .  .  .  .

(4) Civic leagues or organizations organized not for profit but operated exclusively for the promotion of social welfare...

.  .  .  .  .

26 U.S.C. § 501(c)(4) (1976). The Treasury Department has issued a regulation which elaborates the definition of "social welfare":

(2) Promotion of Social Welfare. (i) *In general.* An organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social improvements.

.  .  .  .  .

(ii) *Political or social activities.  ...* Nor is an organization operated primarily for the promotion of social welfare if its primary activity is operating a social club for the benefit, pleasure, or recreation of its members, or is carrying on a business with the general public similar to organizations which are operated for profit.

.  .  .  .  .

26 C.F.R. § 1.501(c)(4)–1 (1983).

A series of revenue rulings issued by the IRS further details the availability of this exemption to homeowner associations such as the taxpayer in the present case. Revenue Ruling 72–102 indicates that a nonprofit organization formed to preserve the appearance of a housing development and to maintain streets, sidewalks, and common areas for the use of residents is exempt under Section 501(c)(4). Rev.Rul. 102, 1972–1 C.B. 149. This ruling notes that for purposes of Section 501(c)(4) and Treasury Regulation 1.501(c)(4)–1, which speak of "social welfare" in terms of "general welfare of the people of the community," a neighborhood precinct, subdivision or housing development may constitute a community. The ruling continues:

For example, exempt civic leagues in urban areas have traditionally represented neighborhoods or other subparts of much larger political units. By administering and enforcing covenants, and owning and maintaining certain non-residential, non-commercial properties of the type nor-

mally owned and maintained by municipal governments, this organization is serving the common good and the general welfare of the people of the entire development.

Rev.Rul. 102, 1972–1 C.B. 149 at 150.

█ In the instant case, Rancho Santa Fe Association, Inc. falls within the definition of a tax exempt organization devoted to the promotion of the general welfare. It performs the functions of a governmental entity and brings about · civic betterments and social improvements that would be sorely missed by the Rancho Santa Fe community should they be lost or curtailed. In addition to providing recreational facilities in the form of a golf course, numerous tennis courts, playgrounds, athletic fields, parks and open spaces, the Association also serves a variety of governmental functions through the activities of its various boards. Further, the Association serves as a liaison to larger governmental bodies to protect the interests of the community which it represents.

This conclusion is not altered by additional IRS interpretations of the exemption, as the government argues. In Revenue Ruling 74–99, the IRS concluded that to qualify for the Section 501(c)(4) exemption a homeowners' association (1) must serve a "community" which bears a reasonable relationship to an area ordinarily defined as a governmental unit, (2) it must not conduct activities directed to the exterior maintenance of private residences, and (3) the common areas or facilities it owns must be for the use and enjoyment of the general public. Rev.Rul. 99, 1974–1 C.B. 131 at 132–33.

In addition, Revenue Ruling 74–99 sets forth the limits which, in the view of the IRS, apply to the availability of the public welfare exemption for housing developments. This ruling states that the term "housing development" is not to be viewed as necessarily coextensive with the term "community," so that not every association which oversees a housing development is entitled to claim the exemption.

Finally, Revenue Ruling 74–99 states that the exemption was "intended only to approve ownership and maintenance by a homeowners' association of such areas as roadways and parklands, sidewalks and street lights, access to, or the use and enjoyment of which is extended to members of the general public, as distinguished from controlled use or access restricted to the members of the homeowners' association...." Rev.Rul. 99, 1974–1 C.B. 131 at 133. In other words, under this ruling, to qualify for the exemption an association must benefit the entire community; it cannot exclude community members from sharing in its largesse.

The most recent pronouncement on the scope of the Section 501(c)(4) exemption by the IRS broadens the earlier view and notes that even where the association does *not* represent an entire community, it qualifies for an exemption if the association's activities benefit the community as a whole. That ruling notes:

Whether a particular homeowners' association meets the requirements of conferring benefit on a community must be determined according to the facts and circumstances of the individual case. Thus, although the area represented by an association may not be a community within the meaning of that term as contemplated by Rev.Rul. 74–99, if the association's activities benefit a community, it may still qualify for exemption. For instance, if the association owns and maintains common areas and facilities for the use and enjoyment of the general public as distinguished from areas and facilities whose use and enjoyment is controlled and restricted to members of the association then it may satisfy the requirement of serving a community.

Rev.Rul. 63, 1980–1 C.B. 116 at 116. The ruling continues on to note that a homeowners' association, which represents an area that is not a community, does not qualify for the exemption under Section 501(c)(4) if it restricts the use of its recreational facilities to members of the association. *Id.*

Under the above analysis, the availability of the exemption to a homeowners' association which restricts the use of a portion of its facilities to members of the association depends on whether the housing development in question is coextensive with the community it serves. If the development and the community are one and the same, then the benefits bestowed by the association on the development benefit the general public within the requirements of the statute, because the association is "promoting in some way the common good and general welfare of the people of the *community*" in accordance with Treasury Regulation 1.501(c)(4)–1, 26 C.F.R. § 1.501(c)(4)–1 (1983) (emphasis added). On the other hand, if the association does not benefit the entire community, under Revenue Ruling 80–63 it would only qualify for the exemption if the benefits it offers to the housing development are available to the general public and not restricted to the members of the association.

In the present case, Rancho Santa Fe as a development constitutes an independent community within the meaning of the statute. Rancho Santa Fe is a housing development, significant in size and self-contained in orientation. It is not the ordinary residential grouping of tract homes, but is an independent community separated geographically from the central area of the city of San Diego of which Rancho Santa Fe is a sub-part. Rancho Santa Fe has its own post office and zip code and, while a few nearby developments such as Fairbanks Ranch share that post office, it is not alleged or contended that Fairbanks Ranch and Rancho Santa Fe are part of the same community.

Given the conclusion that the development of Rancho Santa Fe is coextensive with the community of Rancho Santa Fe, and that Rancho Santa Fe is an independent community, it necessarily follows that the benefits which are provided to the members of the Association which represents the entire community of Rancho Santa Fe promote the general welfare of the people of the community in accordance with the statutory exemption. The fact that in so doing the Association also benefits whoever else might want to avail themselves of the open space, athletic fields, parklands, hiking and bridle trails that constitutes over two-thirds of the Association's land, is but an added benefit of the Association's activities. The critical factor is that the Association benefits the community it serves and represents on an unrestricted basis.

■ Thus, only where an association represents less than the entire community is it a concern whether the benefits of the association are made available to the general public, because in that situation the benefits which are restricted to association members are not benefiting the community as a whole. There is no requirement, however, that if the work of the association benefits the entire community, that it must also benefit the general public in terms of the world-at-large. To graft upon the exemption this additional requirement negates the statutory intent and the language of the regulation which speaks in terms of benefiting the "community." It would also undermine the purpose behind this legislation which was to encourage communities such as Rancho Santa Fe to provide benefits to its residents. *See, People's Educational Camp Society, Inc. v. Commissioner,* 331 F.2d 923, 932 (2d Cir.1964).

To require that Rancho Santa Fe give unlimited access to its golf course and tennis courts beyond the community it serves to the world-at-large in order to obtain the exemption at issue is a neither necessary nor mandated condition. To impose such a requirement would defeat the statutory purpose of the exemption which encourages the provision of services to communities, in that requiring unlimited access to these facilities would necessarily lessen the benefit to the community which the Association represents. Only so many rounds of golf and games of tennis can be played at these facilities and the demand upon them created by the Rancho Santa Fe community alone is great. To order that these facilities must also benefit surrounding commu-

nities would result in a concomitant decrease in availability of these facilities to Rancho Santa Fe itself. Congress did not require that, in order to obtain this exemption, an association must serve an entire city, or even several communities; service to a single community was viewed as sufficient. The Rancho Santa Fe Association, by serving well the community of Rancho Santa Fe, is entitled to this exemption. That has been the position of IRS, as communicated to the Association, for many years. Nothing whatever has changed during those years in the operation, custom or usage of the Association facilities except to broaden public access to those facilities. Under such circumstances, to now seek to eliminate such exemption for the Association without any change whatever in the statutory scheme of regulations of the agency would appear to be inequitable at best.

For these reasons, plaintiff's motion for summary judgment must be granted.