**FLAT TOP LAKE ASSOCIATION, INC., Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 87–1514.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1988.

Decided Feb. 17, 1989.

---

Robert Stephen Kiss (Gorman, Sheatsley & Hutchison, L.C., Beckley, W.Va., on brief) for plaintiff-appellant.

Robert Steven Pomerance (Michael C. Durney, Acting Asst. Atty. Gen., Michael L. Paup, Martha B. Brissette, Tax Div., Dept. of Justice, Washington, D.C.; David A. Faber, U.S. Atty., Charleston, W.Va., on brief) for defendant-appellee.

Before WIDENER, HALL and CHAPMAN, Circuit Judges.

K.K. HALL, Circuit Judge:

Flat Top Lake Association ("Flat Top" or "the Association") appeals an order of the district court granting summary judgment in favor of the United States in a civil action seeking a refund of income taxes. The district court concluded that Flat Top was not entitled to exemption from taxation as a social welfare organization pursuant to Section 501(c)(4) of the Internal Revenue Code, 26 U.S.C. § 501(c)(4). Finding no error in that determination, we affirm.

I.

Flat Top was organized in 1950 as a nonprofit corporation under state law by certain individuals, who wished to develop an artificial lake in the area near Beckley, West Virginia. The purpose of the Association as provided in the articles of incorporation was:

> To own, control, lease and sell real estate; to build, maintain and operate a lake and other recreational facilities for the pleasure and convenience of its members without profit upon a cooperative basis, and to do all other things necessary or incidental to the operation of a recreational and conservation project.

In furtherance of its stated goal, the Association acquired approximately 2,200 acres of land whereon it constructed a 230 acre artificial lake. The land surrounding the lake front was subdivided into lots and sold at $1,000 a lot. Access to the property was provided by a two-lane road also constructed by the Association. The road is not a public highway and bears a sign at the entrance to the development stating "Flat Top Lake Association, Private Property, Members Only."

The articles of incorporation and the Association bylaws provide that entry into the development property, and use of the lake or any other Association facilities is restricted to members and their guests. Membership is limited to persons over 21 years of age who own in their own names one or more lots in the development. Members must also pay annual dues and special assessments as levied by the Association's board of directors with the approval of the majority of the members.

At present there are 375 lots in the Flat Top Lake development owned by members. There are permanent structures on 240 of the lots and 80 families reside at Flat Top on a year-round basis. The remaining members use their lots as recreational facilities.

There are no schools, churches or commercial establishments within the bounds of Flat Top lake property, nor is commercial development permitted by the Association bylaws. Although Flat Top has the

requisite number of residents to incorporate as a class four municipality under West Virginia law, it has chosen to continue to operate under statutes applicable to private corporations. The Association has, however, undertaken certain tasks of a quasi-governmental nature. It has constructed a bridge within the development, maintains certain common areas including the road, a park, and the lake itself, and provides waste disposal for residents. Finally, the Association has arranged for some law enforcement by obtaining the appointment of a conservator of the peace pursuant to West Virginia Code § 6–3–1. The conservator is paid by the Raleigh County Sheriff's Department which is in turn reimbursed by the Association.

From 1952 until 1979, the Association enjoyed exemption from federal taxation as a social welfare organization.[1] In 1979, however, the Regional Director of the Internal Revenue Service ("IRS") concluded that the Association could not qualify for exempt status because it did not benefit a "community" bearing a "recognizable relationship to a governmental unit." Reasoning that the Association existed only for the private benefit of its members, the Director revoked the social welfare organization exemption retroactively to 1975.

The Association sought administrative review of the Director's adverse decision but the revocation of exempt status was affirmed by the Commissioner of the IRS on June 18, 1981. Thereafter, Flat Top, as required, filed returns and paid taxes for the years 1975–81.[2] Amended returns were subsequently filed again asserting exempt status and seeking a refund. After the refunds were denied, the Association filed the instant civil action seeking a judicial determination that it is and has been a tax exempt organization.

By memorandum opinion filed on October 14, 1986, the district court granted summary judgment in favor of the United States. The district judge noted that she was aware of no authority that authorized tax exemption for "a private association of home owners which restricts use of its facilities to the exclusive use of its members."

This appeal followed.

## II.

◼ At issue is the proper interpretation and application of section 501(c)(4) of the Internal Revenue Code, 26 U.S.C. § 501(c)(4) which provides a tax exemption for:

Civic leagues or organizations not organized for profit, but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to employees of a designated person or persons in a particular municipality and the net earnings of which are devoted exclusively to charitable or recreational purposes.

The chief analytical difficulty lies in the need to formulate a workable definition of "social welfare." The IRS has attempted to advance the analysis by promulgating a regulation at 20 C.F.R. § 1.50(c)(4)–1 which defines a social welfare organization as one "primarily engaged in promoting in some way, the common good and general welfare of the *community*." (emphasis added) Unfortunately, the regulation itself is of limited value since it merely substitutes one amorphous term (i.e. "community") for another ("social welfare").

On appeal, the Association contends that the district court failed to recognize that in reality Flat Top Lake is a separate, distinct, definable "community" and urges our con-

---

1. Exemption was originally granted pursuant to Section 101(8) of the Internal Revenue Code which corresponds to the present provision found at 26 U.S.C. § 501(c)(4).

2. According to materials provided by the Association in connection with this appeal, it has paid the following amounts since the revocation of its exemption:

| | |
|---|---|
| 1975 | $ 974.00 |
| 1976 | $ 994.00 |
| 1977 | 42.00 |
| 1978 | 51.00 |
| 1979 | 6.00 |
| 1980 | 1,232.40 |
| 1981 | 1,426.00 |
| 1982 | 2,837.00 |
| 1983 | 1,976.00 |

sideration of *Vecellio v. United States*, 196 F.Supp. 1 (D.W.Va.1961), in which the district court repeatedly described Flat Top Lake in those terms. Citing, *inter alia, Rancho Santa Fe Association v. United States*, 589 F.Supp. 54 (S.D.Cal.1984), and *Lake Petersburg Association v. United States*, 35 T.C.M. (P–H) 74,055 (1974), [1974 WL 2116] appellant argues that an organization that directs its efforts to the betterment of all inhabitants of a community equally thereby serves the social welfare even if the benefits are not available to the public at large.

█ We acknowledge that the IRS has been something less than fully successful in establishing the precise limits of a Section 501(c)(4) exemption. We are further aware that some judicial decisions, most notably *Rancho Santa Fe, supra*, wherein the district court approved a social welfare exemption for an association serving a privately built housing development, do offer some support for appellant's position. Nevertheless, we find the Association's argument ultimately unsatisfying. Instead, we are persuaded as was the district court, that an organization that operates for the exclusive benefit of its members does not serve a "community" as that term relates to the broader concept of social welfare.

In 1972, the IRS recognized that "a neighborhood, precinct, subdivision, or housing development may constitute a community" for purposes of section 501(c)(4). See Rev.Rule 72–102, 1972–1 C.B. 149. Within two years, however, the IRS found it necessary to clarify that determination to avoid the claims for exemption advanced by home owners associations—private organizations formed by property owners in real estate developments, funded by member assessments and dedicated to the maintenance of the development. In Rev.Rule 74–99, 1974–1 (C.B. 131, the IRS stated:

A community within the meaning of section 501(c)(4) of the code and the regulations is not simply an aggregation of homeowners bound together in a struc-

tured unit formed as a integral part of a plan for the development of a real estate subdivision and the sale and purchase of homes therein. Although an exact delineation of the boundaries of a "community" contemplated by section 501(c)(4) is not possible, the term as used in that section has traditionally been construed as having reference to a geographical unit bearing a reasonably recognizable relationship to an area ordinarily identified as a governmental subdivision or a unit or district thereof.

Significantly, in 1976 Congress amended the Internal Revenue Code to create a specialized exemption for "homeowners associations" Tax Reform Act of 1976, Pub.Law No. 94–455, 90 Stat. 1520 § 2101. The legislative history of the new section 528 reveals Congress' assessment of the then existing law and particularly the scope of the social welfare exemption provided by section 501(c)(4).

Under present law, generally a homeowner association may qualify as an organization exempt from federal income tax (under sec. 501(c)(4) of the Code) only if it meets three requirements (Rev.Rul. 74–99, 1974–1 C.B. 131). First, the homeowner's association must serve a "community" which bears a reasonably, recognizable relationship to an area ordinarily identified as a governmental subdivision or unit. Second, it must not conduct activities directed to the exterior maintenance of any private residence. Third, common areas or facilities that the homeowner's association owns and maintains must be for the use and enjoyment of the general public.

H.R.Rep. No. 94–658, 94th Cong., 1st Sess. at 326–32; S.Rep. no. 94–938, 94th Cong.2d Sess. at 393, U.S.Code Cong. & Admin.News 1976, pp. 2897, 3222–28, 3821.

The third prong in the summary demands attention in the instant case. Clearly Congress believed that an organization cannot serve social welfare if it denies its benefits to the general public.[3] Implicitly, Congress recognized that a true "communi-

---

**3.** Congress' assessment is particularly meaningful in light of the fact that the existence and extent of deductions from taxation are purely

legislative determinations. *Lull v. C.I.R.*, 602 F.2d 1166 (4th Cir.1979).

ty" functions within a broader national fabric. Service to such a community thereby furthers the national interest by expanding potential, by opening opportunities to all citizens who may someday find themselves within the bounds of that particular community. Although it is unquestionably their right to do so, when a group of citizens elects, as have the inhabitants of Flat Top Lake, to separate themselves from society and to establish an entity that solely advances their own private interests, no potential for general social advancement is implicated. In many ways, exemption from taxation may be seen as a democratic commonwealth's method of acknowledging the conferral of a universal benefit. Wholly private activity, however meritorious, confers no such benefit which would render a compensatory exemption appropriate.[4]

We have addressed this distinction between the advancement of private interest and the promotion of social welfare on at least one other occasion. In *C.I.R. v. Lake Forest, Inc.*, 305 F.2d 814 (4th Cir.1962), we reversed the Tax Court's award of an exemption under 26 U.S.C. § 101—the predecessor of section 501(c)(4)—to an organization that operated a housing development as a means of providing low income housing to veterans. Reasoning that the work of the Lake Forest Corporation, although "unquestionably praiseworthy" was not directed to the benefit of the "public at large" nor of "a public character," we concluded that it was a "privately devoted endeavor" and not an exempt social welfare organization. *Lake Forest*, 305 F.2d at 818.

Admittedly, *Lake Forest* did not address the precise argument urged upon us by taxpayer in this case [5] *i.e.* that an organization serving a private development also serves social welfare by granting benefits to all members of that development equally. At the core of *Lake Forest*, however, is the principle that society is an inclusive concept. An organization that bases its benevolence upon some exclusive characteristic of the recipient has moved away from benefitting society. That is certainly true when, as in the instant case, the beneficiaries of the taxpayer's efforts have consciously and deliberately sought to insulate themselves from contact with society around them.

To the extent that the district court decision allowing a section 501(c)(4) exemption in *Rancho Santa Fe, supra*, can be read to support the position asserted by the Association in this appeal, we reject its reasoning. We would note, in any event, that the factual circumstances presented in *Rancho Santa Fe* are dramatically distinguishable from the instant case. The housing development served by the organization claiming exemption therein was much larger than Flat Top and, in virtually every meaningful fashion, functioned as a public municipality. Access to the development by nonresidents was unrestricted and the use of a substantial portion of the development's recreational facilities by the general public was unlimited.[6]

Unlike the inhabitants of Flat Top Lake, there was no indication that the inhabitants of Rancho Santa Fe sought to shut themselves off from society and to hold an outside world at arms length. While the court in *Rancho Santa Fe* did believe that a development that attained "community" status could exclude the public at large and still obtain section 501(c)(4) exemption, that conclusion must be regarded largely as dicta in light of the actual nature of Rancho Santa Fe.

The determination of a "community" for section 501(c)(4) purposes will generally

---

4. In the slightly different context of a disputed charitable deduction sought pursuant to section 501(c)(3), the Supreme Court observed that tax benefits in this area are intended to encourage the development "of private institutions that serve a useful public purpose or take the place of public institutions of the same kind." *Bob Jones University v. United States,* 461 U.S. 574, 588, 103 S.Ct. 2017, 2026, 76 L.Ed.2d 157 (1983).

5. Taxpayer in *Lake Forest* contended that an organization that addressed the national concern with adequate housing was entitled to tax exemption even if the organization focused its remedial efforts on a specific group.

6. Only the tennis courts and golf course had any limitation. Even there, the restriction was not absolute in that paying guests at a local inn were permitted to use these facilities. 589 F.Supp. at 56.

turn on the facts and circumstances of the individual case. See Rev.Rule 80–63, 1980–1 C.B. 166. Nevertheless, the guiding focus must remain upon whether the would-be community is an active part of society or a private refuge for those who would live apart. In the instant case, Flat Top Lake Association has obviously done all within its power to create a wholly private environment for its members. It is not a community within the contemplation of section 501(c)(4)[7] and cannot claim a tax exemption for benefitting itself.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

WIDENER, Circuit Judge, dissenting:

Because I think Flat Top Lake Association should not necessarily be excluded from the benefit of the exemption, I respectfully dissent.

The Association performs, as the majority recognized, "tasks of quasi-governmental nature" for the Association members and others. Those tasks include year-round water and sanitation services, snow removal from common areas, police protection, road and equipment maintenance and maintenance of the dam and other common areas. The Association is working with local authorities in considering construction of a sewage treatment plant. Further, it has promulgated a disaster relief plan in the event of failure of the dam, and it supplies a backup water supply to the nearby City of Beckley, a city of some 19,000 population.

The tax exemption was revoked because the IRS, with whom the district court and the majority have agreed, determined that the Association did not meet the definition of a "community" in order to qualify for the exemption because the Association "restricts the use of its facility to the exclusive use of its members."[1] At 110. Public use is thus made the *sine qua non* of a § 501(c)(4) exemption.

The rationale of the decisions of the district court and the majority is misplaced, however, for, as I will demonstrate, the proper premise of the federal tax exemption for social welfare organizations is not based upon public use, as the majority holds, but upon the public benefit derived therefrom. The district court found explicitly that Flat Top Lake Association falls squarely within the language of 26 U.S.C. § 501(c)(4) as "a nonprofit organization" operated "for the promotion of social welfare." Since that finding of fact by the district court is even based on stipulation, I take it the matter is beyond question.

With all deference to the majority's view, I suggest that we are off the track. The correct approach to the question before us is not that taken in the majority opinion; rather, it is that set out in *Peoples Educational Camp Society, Inc. v. CIR*, 331 F.2d 923 (2d Cir.), cert. den., 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45 (1964), in which the Second Circuit, in construing § 501(c)(4), stated:

The exemption granted to social welfare and like organizations is made in recognition of the benefit which the public derives from their social welfare activities, *Trinidad v. Sagrada Orden*, 263 U.S.

---

**7.** The Association's reliance on the references to Flat Top Lake as a community in *Vecellio v. United States*, 196 F.Supp. 1 (D.W.Va.1961), is misplaced. The court therein used the term to distinguish Flat Top from a sporting club liable for a variety of excise tax. The meaning of language in specialized areas of the law varies according to statutory context. Section 501(c)(4) was not at issue in *Vecellio* and any reference to a community in that case has little, if any, relevance in this appeal.

**1.** The ordinary definition of "community" is "A body of individuals organized into a unit or manifesting usually with awareness some unifying trait." *Webster's 3d Intl. Dictionary*. And

even the IRS defines the term, as used in connection with § 501(c)(4), as having "... a reasonably recognizable relationship to an area ordinarily identified as a governmental subdivision or a unit or district thereof." Rev. Ruling 74–99.

It is at once apparent the decision of the majority can live with neither of these definitions, so it defines "community" so that it must "... relate[ ] to the broader concept of social welfare," or "... function[ ] within a broader national fabric." At 111, 112. The quoted phrases used in the majority opinion, I suggest, are euphemisms for the fact that the taxpayer loses.

578, 581, 44 S.Ct. 204, 68 L.Ed. 458 (1924), and we think it only fair to determine a particular organization's right to an exemption largely on the basis of the effect its operations have on the public.

Thus, we see that the Second Circuit, unlike ours, by its reliance on *Trinidad*, places the emphasis where it should be, on the public benefit resulting from the activity, not upon the public use thereof.

Using that analysis, there is no doubt that in this case either a judgment for the taxpayer is required, or at the least the question should be reconsidered on remand. There is no evidence in this record but that all the activities of the taxpayer benefit the public, for they directly affect the public purse by performing activities which the taxpayers otherwise would have to pay for. Even if it might be said that the district court did not approach the matter from the standpoint of public benefit rather than public use and should be afforded another opportunity to find facts, that opportunity should be offered; although, in this case, I see no use of it because the government does not suggest any activity undertaken by the taxpayer which does not benefit the public.