INDIAN LAKE PROPERTY OWNERS ASSOCIATION, INC., Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. 73153.

Supreme Court of Missouri, En Banc.

July 23, 1991.

---

James A. Broshot, Steelville, for appellant.

William L. Webster, Atty. Gen., Carole Lewis Iles, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Indian Lake Property Owners Association, Inc. (Association) seeks review of a final decision of the Administrative Hearing Commission (AHC). § 621.189.[1] The AHC affirmed a determination by the Director of Revenue that the Association was not a "civic organization" and thus not entitled to exemption from sales and use taxes pursuant to § 144.030.2(20), RSMo Supp.1990. Because the case involves construction of a revenue law, this Court has jurisdiction. *Mo. Const. art. V, § 3.* The decision of the AHC is affirmed.

The Association was formed as a not-for-profit corporation in 1962. Its membership is limited to lot owners in the Indian Hills subdivision located in Crawford County.

The subdivision is approximately five miles from Cuba, Missouri. Among its various functions, the Association enforces subdivision covenants regarding building and use restrictions. It also maintains roads, a lake, a dam and spillway, a boat dock and common ground, all located within the subdivision. It provides security patrols and controls access to the subdivision through a gate. The Association provides trash collection services to residences within the subdivision.

The Association derives its income from assessments to members. The authority for the assessments is found in restrictive covenants applicable to all property in the subdivision. Association members are issued identification cards and vehicle bumper stickers. Members are required to register guests. Only members and their registered guests are permitted access to the subdivision and its roads, lake, boat dock and common areas.

The Association has been granted exemption from federal income taxes.

The AHC concluded that the Association is not a civic organization within the meaning of the statute, but is a homeowners association. The AHC affirmed the decision of the Director of Revenue denying the Association's application for a sales and use tax exemption. This proceeding for judicial review followed.

■ The decision of the AHC must be upheld if authorized by law and supported by substantial evidence upon the whole record and the result is not clearly contrary to the reasonable expectations of the general assembly. § 621.193. Tax exemption statutes are construed strictly against the taxpayer and the burden is on the taxpayer to prove entitlement to the exemption. *Spudich v. Director of Revenue,* 745 S.W.2d 677, 682 (Mo. banc 1988).

■ The Association asserts two points of error on the part of the AHC. First, the Association claims the decision of the AHC is based on factual findings that are not supported by any evidence in the record. Second, the Association argues that the

1. References to Missouri statutes, unless otherwise stated, are to RSMo 1986.

homeowners association performs quasi-governmental functions for the common welfare and public good, and thus qualifies as a civic organization.

## I.

The findings that the Association believes to be erroneous, yet critical to the AHC decision were the following:

9. The Association conducted no social, educational, cultural, recreational or religious activities for its members.

10. The Association did not provide any services to its members which any governmental entity would have been legally obligated to provide if the Association were not providing it.

11. In November, 1989, the Internal Revenue Service granted a federal tax exemption to the Association as a civic organization under I.R.C. § 501(c)(4). In its application, the Association did not apply for or obtain exemption under I.R.C. § 528 which provides an exemption specifically for "homeowners associations."

In the argument portion of its brief, the Association changes its claim somewhat, arguing that finding number 9 was irrelevant. The brief squarely admits "there was no evidence submitted showing the Association conducted social, educational, cultural, recreational or religious activities." In addition, Paul Hoth, the president of the Association, after testifying to the organization's various functions, was asked if it ever conducted "any kind of activities or anything like that." Hoth replied, "Not really." Finding number 9 is supported by the evidence.

Finding number 10, that the Association provided no service that any governmental entity was obliged to provide, is not shown to be erroneous. The Association concedes there is no statutory duty that requires any governmental agency to maintain private roads or dams. In addition, there is no statutory authority requiring any law enforcement agency to provide security guards or road patrols on private road networks. Nevertheless, the Association argues that its road patrols relieve the county sheriff from patrolling, that its dam is inspected and licensed by the state, and that its trash collection services relieve Crawford County of a statutory obligation to provide waste collection services. The only authority cited in support of the Association's argument is § 260.215. The brief claims that statute obligates the county to provide for the collection of solid waste. The section cited has no application to unincorporated areas in third and fourth class counties unless the governing body of the county elects to make the county subject to the statute. § 260.215.4. There was no evidence here to suggest that Crawford County, a third class county, had made such election. Even if the county has elected to subject itself to that statute, state regulations permit the county to comply by imposing responsibility for waste collection on individuals. 10 C.S.R. 80-6.010(3)(A)(3)(A)(III). The Association performs no functions that are the legal obligation of a governmental entity.

The 11th finding is questionable, but not for the reason suggested or with the effect argued by the Association. The argument again does not claim there was a lack of evidence to support the finding or point to evidence that contradicts the finding. Rather, the argument is made that the part of the AHC's finding that the Association did not apply for exemption under I.R.C. § 528 (26 U.S.C. § 528), a provision exempting homeowners associations from federal income taxes, was irrelevant. The Association contends that the only relevant finding is that the Association had been granted a federal income tax exemption as a "civic league or social organization" under 26 U.S.C. § 501(c)(4). From that platform, the Association argues that it is entitled to the status of civic organization. As is readily apparent, the argument transcends the bounds of the point relied on. For the moment, the discussion will be limited to the issue raised in the point presented.

■ The evidence regarding the federal tax exemption status of the Association is confusing. It applied for exemption as a

civic league or social welfare organization pursuant to 26 U.S.C. § 501(c)(4). Initially, an exemption letter was issued by the Internal Revenue Service granting the exemption as a social club under 26 U.S.C. § 501(c)(7). However, a subsequent letter was sent purporting to grant exemption under 26 U.S.C. § 501(c)(4). In the last paragraph of the second letter it is stated, "This letter supersedes our [previous letter] which states, in error that you were exempt under I.R.C. 501(c)(4)." This sentence creates an internal inconsistency in the letter. Also, the record is silent as to whether the Association applied for exemption under 26 U.S.C. § 528 as a homeowners association. Thus, the finding of the AHC would be more accurately stated, "There is no evidence" the Association applied for or obtained exemption as a homeowners association. But the effect of these deficiencies in the 11th finding are not crucial to the result. The decision in this case does not turn on the Internal Revenue Service's determination of the Association's federal income tax status. *Trustees of Local 88 v. State Tax Comm'n,* 367 S.W.2d 549, 555 (Mo.1963). In sum, the first point is without merit.

## II.

The second point on appeal, and the basis of much of the argument under Point One, is that the decision of the AHC is incorrect because the Association is a "civic organization" within the meaning of § 144.030.-2(20). Because this Association performs responsibilities akin to those provided by a government, the Association asserts it qualifies as a civic organization. Like a governmental entity's taxing power, the Association assesses, collects and spends member fees. It enforces land use restrictions like a government enforces zoning and building codes. Also, it provides security services and road and common area maintenance like a government. In support of its argument, the Association cites a series of cases indicating that functions of a homeowners association resemble those of a government. *See, e.g., Terre du Lac*

*Ass'n, Inc. v. Terre du Lac, Inc.,* 737 S.W.2d 206, 215–16 (Mo.App.1987). Whether the Association's powers and duties are characterized as governmental or contractual in nature is not the critical question in this case.

The dispositive question is the meaning of the words "civic organization." Words and phrases found in the revised statutes of Missouri are to be taken in their plain or ordinary and usual sense. § 1.090. That meaning is, in turn, ordinarily derived from the dictionary. *Boone Co. Court v. State,* 631 S.W.2d 321, 324 (Mo. banc 1982).

The relevant dictionary definition of "civic" is:

> Forming a component of or connected with the functioning, integration, and development of a civilized community (as a town or city) involving the common public activities and interests of the body of citizens ... concerned with or contributory to general welfare and the betterment of life for the citizenry of a community or enhancement of its facilities; *esp:* devoted to improving health, education, safety, recreation, and morale of the general public through nonpolitical means[.]

*Webster's Third New International Dictionary,* 412 (1986) (emphasis in original). For an organization to be civic in nature, its purposes and functions must be concerned with and relate to the citizenry at large. The organization must benefit the community it serves on an unrestricted basis. In this particular case, it appears that the Association has done everything within its power to create a private environment and to exclude nonmembers from any benefits. The Association's activities are directed solely toward protecting the value of and access to private property. Any benefit accruing to the general public is at best incidental and peripheral to the members' private interests. As previously discussed, none of the functions carried out by this Association are responsibilities required of any governmental agency.

The Association's argument relies heavily on its exemption under 26 U.S.C. § 501(c)(4) as a "civic league or social wel-

fare organization" and the case of *Rancho Santa Fe Ass'n v. U.S.*, 589 F.Supp. 54 (S.D.Cal.1984). *Rancho Santa Fe* is factually distinguishable in that the housing development served by the organization claiming exemption was much larger, consisting of over 6,000 acres and 3,000 members, access to the development by nonresidents was unrestricted and most of the recreational facilities were open to the general public. It is true that in *Rancho Santa Fe* there was dictum suggesting that a development obtaining community status could exclude the public at large and still obtain the § 501(c)(4) exemption. 589 F.Supp. at 58. That dictum has since been repudiated in a case with facts similar to those at hand. *Flat Top Lake Ass'n, Inc. v. U.S.*, 868 F.2d 108 (4th Cir.1989).

The policy that justifies civic organization exemption from sales and use taxes is the same as that behind 26 U.S.C. § 501(c)(4) discussed in *Flat Top Lake:*

> Clearly Congress believed that an organization cannot serve social welfare if it denies its benefits to the general public. Implicitly Congress recognized that a true "community" functions within a broader national fabric. Service to such a community thereby furthers the national interest by expanding potential, by opening opportunities to all citizens who may find themselves within the bounds of that particular community.

868 F.2d at 111–112. As was true in *Flat Top Lake*, the members of this Association clearly have the right to separate themselves and establish an entity that solely advances their private interests. But activities designed to protect wholly private interests, though meritorious, confer no benefit on the general public that would render the tax exemption appropriate. This Court's holding is consistent with that in *Flat Top Lake*. The Association's second point is denied.

## CONCLUSION

The AHC's determination that the Association does not benefit the public sector of its associated region, that its funds are used exclusively for the benefit of Association members, that the Association has no purpose to provide for the common welfare or the public good, and that its activities do not relieve government of a burden it would otherwise be required to meet are supported by substantial evidence and support the AHC's decision denying the Association a tax exemption under § 144.030.-2(20). Affirmed.

ROBERTSON, C.J., RENDLEN, COVINGTON and BLACKMAR, JJ., KENNEDY, Special Judge, and HIGGINS, Senior Judge, concur.