OCEAN PINES ASSOCIATION, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 5127–08.　　　　Filed August 30, 2010.

P, a homeowners association exempt from tax under sec.
501(c)(4), I.R.C., operated two parking lots and a beach club
eight miles from the area in which its members lived. The
parking lots and the primary beach club facilities were acces-
sible only to the association's members and their guests. The
association did not report its net income from the parking lot
and beach club activities as unrelated business taxable
income on its tax returns for 2003 and 2004. R issued a notice
of deficiency determining that the net income was subject to
the unrelated business income tax because the operation of
the parking lots and the beach club is not substantially
related to the promotion of community welfare (the purpose
constituting the basis of the association's exemption under
sec. 501, I.R.C., see secs. 1.501(c)(4)–1(a)(2), 1.513–1(a), (d)(1),
Income Tax Regs.) and because the revenue received from
operating the parking lots is not rent from real property
under sec. 512(b), I.R.C. *Held*: The operation of the parking
lots and the beach club is not substantially related to the pro-
motion of community welfare because the facilities are not
open to the general public. *Held*, *further*, the revenue received
from operating the parking lots is not rent from real property.

*Steven M. Gevarter*, for petitioner.
*Jared W. Murphy*, for respondent.

OPINION

MORRISON, *Judge*: On November 29, 2007, respondent
Commissioner of Internal Revenue mailed a notice of defi-
ciency for the taxable years 2003 and 2004 to petitioner
Ocean Pines Association, Inc. We refer to respondent as the
IRS. We refer to petitioner as the Association. In the notice,
the IRS determined the following deficiencies in income tax
and additions to tax under section 6651(a)(1):[1]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect

276

| Year | Deficiency | Addition to tax sec. 6651(a)(1) |
|------|-----------|---------------------------------|
| 2003 | $65,929 | $16,482 |
| 2004 | 94,195 | 23,549 |

After concessions, the issues remaining for decision are: (1) whether the Association's operation of a beach club and two nearby parking lots is substantially related to the promotion of community welfare (we hold that the operation is not substantially related, and that therefore the operation is subject to the tax on unrelated-business income), and (2) whether the revenue received by the Association from its members for parking on its two parking lots is exempt from the tax on unrelated-business income as rent from real property within the meaning of section 512(b)(3) (we hold that the revenue is not rent from real property).

### Background

The parties agreed to submit this case to the Court without trial under Rule 122. We adopt as findings of fact all statements contained in the stipulation of facts. The stipulation of facts and the attached exhibits are incorporated here by this reference. The Association is a homeowners association and nonstock corporation organized and incorporated under the laws of Maryland with its principal office in Maryland. The IRS ruled that it was exempt from federal income tax as an organization described in section 501(c)(4) (civic league or organizations not organized for profit but operated exclusively for the promotion of social welfare).

The Association's articles of incorporation state that one of its purposes is "to further and promote the community welfare of property owners in the residential community located in Worcester County, Maryland known as 'Ocean Pines'". Its membership consists of all of the owners of residential property within the 3,500-acre area known as Ocean Pines. According to the 2000 census, the population of Ocean Pines was 10,496. The Association collects property assessments and other fees from its members and enforces zoning restrictions against its members. It maintains bulkheads, road-

for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

ways, and parking lots within Ocean Pines. The Association also operates recreational facilities in Ocean Pines that are open to both members and nonmembers, including five swimming pools, a golf course, two marinas, a yacht club, tennis complexes, a soccer field, 10 parks, and five walking trails. The Association provides, through its Recreation and Parks Department, various seminars, sports camps, a children's softball league, swimming lessons, and adult aquatic programs to both members and nonmembers. Some of the recreational facilities and services described above are free. Others are available only for a fee, which is typically higher for nonmembers than members. The Association maintains two volunteer fire stations and a police force. Parking within the Ocean Pines area is free and open to both members and nonmembers.

The Association owns beachfront property approximately eight miles from the Ocean Pines area in Ocean City, an area within Worcester County, Maryland. The Ocean City property consists of two parking lots, containing 300 parking spaces in total, and an oceanfront beach club, known as the Ocean Pines Beach Club. The Association's members who use the parking lots and the beach club commute approximately 15 minutes by car from Ocean Pines to Ocean City. The beach club is open from the beginning of Memorial Day weekend until Labor Day (we refer to this period as the summer months). The beach club is closed during the evenings unless reserved for special events. The beach club allows both Association members and nonmembers to purchase food and beverage services and to use its restrooms for free. However, the swimming pool, gym lockers, and shower facilities are accessible only to Association members. The record does not reveal whether the Association charges a separate fee to its members who use these facilities. In the summer months, the Association limits use of the parking lots to its members who have purchased parking lot permits, and their guests. They may use the parking lots during the day until 4 p.m. Only the Association's members are eligible to purchase permits for the parking lots. The Association's members must pay a weekly or monthly fee depending on the period for which the permit is issued. The Association's employees in Ocean Pines issue the permits. The Association leases the parking lots to third-party businesses during the

summer months from approximately 4 p.m. until approximately 3 a.m. The Association also leases the lots during all nonsummer months. It provides no significant services to the third-party businesses. The Association employs a guard daily during the summer months from 8 a.m. until 4 p.m. The guard removes a chain barring entrance to the parking lots at the beginning of each day during the summer months (and replaces it at the end of each summer day) and checks the parking permit decals on the vehicles as they enter the parking lots. If the vehicles do not have permit decals, they are turned away. If any vehicle remains on the parking lot from the periods of use by the third-party businesses, the parking guard places a note on the vehicle demanding that the owner remove the vehicle from the parking lot as soon as possible. The parking guard does not collect fees or park vehicles; the lots offer no valet services. Parking is available upon a first-come, first-served basis; i.e., there are no assigned parking spaces. The Association does not maintain common areas in Ocean City, such as beach or bike paths, nor does it levy assessments on the residents or homeowners in Ocean City.

In 2003, the Association received $232,089 in revenue from the two parking lots, $61,024 of which was paid by the third-party businesses. It paid $39,092 in expenses attributable to the operation of the parking lots by the Association (as opposed to the leasing of the parking lots to third-party businesses). It incurred a $20,486 net loss for operation of the beach club in 2003. In 2004, the Association received $266,487 in revenue from the two parking lots, $64,692 of which was paid by third-party businesses. It paid $21,939 in expenses attributable to the operation of the parking lots by the Association. It incurred a $1,741 net loss for operation of the beach club in 2004. The Association timely filed Form 990, Return of Organization Exempt From Income Tax, but did not file the form on which the unrelated business income tax is reported, Form 990–T, Exempt Organization Business Income Tax Return. The Form 990 is not in the record.

The IRS issued a notice of deficiency to the Association on November 29, 2007 (discussed above), determining that the Association owed unrelated business income tax on the net income attributable to the operation of its parking lots. The net income figures used to calculate the deficiency in unre-

lated business income tax for each tax year at issue included the income from the leasing of the parking lots to third parties and a deduction for the parking lot expenses, but excluded the losses from the operation of the beach club.[2] The IRS determined the late-filing addition to tax in the notice because the Association failed to file a Form 990–T. The Association filed a petition in response to the notice of deficiency. When this case was called from the calendar for the trial session of this Court at Baltimore, Maryland, the parties filed a joint motion for leave to submit the case under Rule 122, which the Court granted, and a stipulation of settled issues. In the stipulation of settled issues, the IRS conceded that

the revenue received by the Association from the leasing of its Ocean City parking lots to third parties in the evening hours and during the off-season[3] is excepted from § 511 unrelated business taxable income because it satisfies the § 512(b) exception to unrelated business income for the rent from real property.

The IRS also conceded that the Association was not liable for the late-filing addition to tax under section 6651(a)(1) because it relied on the advice of its accountants in determining that filing a Form 990–T for the years at issue was not necessary. The parties stipulated that the amount of net income from the Association's operation of the parking lots and the beach club potentially subject to the unrelated business income tax is $111,487 in 2003 and $178,115 in 2004. These net income amounts were calculated by excluding the revenue received from the third-party businesses for rental of the parking lots, by including the parking lot fees received from members of the Association, by deducting the losses from the operation of the beach club, and by deducting all of the expenses from the operation of the parking lots.

## Discussion

The Association has the burden of proving that the determinations of the deficiencies in the notice are wrong. See

---

[2] As explained below, the IRS now concedes that the losses from the operation of the beach club are deductible against the net income figures used to calculate the deficiency.

[3] The revenue referred to in the stipulation of settled issues is the $61,024 paid in 2003 and the $64,692 paid in 2004 by the third-party businesses, unreduced by any expenses allocable to the Association's operation of the parking lots.

Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). For reasons explained below, we hold that the operation of the parking lots and the beach club is not substantially related to the promotion of community welfare and that the income from operation of the parking lots is not rent from real property within the meaning of section 512(b)(3). Therefore, the income from operation of the parking lots and the beach club is subject to the unrelated business income tax.

I. *Whether the Operation of the Parking Lots and the Beach Club Is Substantially Related to the Promotion of Community Welfare*

Section 501(c)(4) exempts from Federal tax "Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare". Regulations clarify that "An organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community." Sec. 1.501(c)(4)–1(a)(2), Income Tax Regs. By implication, the regulation defines "exclusively" to mean "primarily". Thus, "an organization will not be denied exemption if it partakes in activities not in furtherance of an exempt purpose so long as such nonconforming activities are insubstantial in comparison to activities which further exempt purpose(s)." *Ky. Bar Found., Inc. v. Commissioner*, 78 T.C. 921, 923 (1982). Section 501(c)(4) organizations, like some other types of tax-exempt organizations, must pay income tax on their "unrelated business taxable income". See sec. 511(a)(1). Section 512(a)(1) defines "unrelated business taxable income". It provides:

Except as otherwise provided in this subsection, the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business * * * regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b).

Section 513(a) provides that the term "unrelated trade or business" means any trade or business the conduct of which is not "substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such

organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501". Accordingly, income is unrelated business taxable income if it is derived from a regularly carried-on trade or business that is not substantially related to the purpose constituting the basis of the organization's exemption under section 501. See sec. 1.513–1(a), (d)(1), Income Tax Regs. For the conduct of a trade or business to be substantially related to the purpose or purposes for which the organization was granted a tax exemption, "performance of the services from which the gross income is derived must contribute importantly to the accomplishment of these purposes." Sec. 1.513–1(d)(2), Income Tax Regs. The parties agree that the parking lot and beach club activity constitute a regularly carried-on trade or business, but disagree as to whether the activity is substantially related to the purpose of promoting community welfare, the purpose constituting the basis of the Association's exemption under section 501(c)(4).

The Association contends that the parking lot and beach club activity "[promote] the community welfare of the property owners" of Ocean Pines, which is one of the purposes of the Association that was set forth in its articles of incorporation. It argues that "the ability to walk on the beach or swim either in the ocean or in the pool at the * * * [beach club] * * * directly promotes the health and wellness (i.e., 'community welfare') of the * * * [Association's] members". The IRS argues, first, that the facilities at the beach club are solely recreational and thus would be nontaxable if operated by a section 501(c)(7) organization (a "club" that is "organized for pleasure, recreation, and other nonprofitable purposes") but are taxable because they are operated by a section 501(c)(4) organization. It argues, second, that the beach club and the parking lots do not promote community welfare because they are not open to the general public. We need not determine whether the IRS's first argument is correct. We agree with the IRS's second argument. We conclude that the operation of the beach club and the parking lots does not promote community welfare because they are not accessible to nonmembers; that is, the general public.

In *Flat Top Lake Association, Inc. v. United States*, 868 F.2d 108, 111–113 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that a homeowners association that

restricts the use of its facilities to its members does not promote the welfare of the community. Although *Flat Top* concerned the question of eligibility for section 501(c)(4) status, as opposed to the question of whether a particular activity of a section 501(c)(4) organization is substantially related to the promotion of community welfare and is therefore exempt from the unrelated business income tax, the two questions are related. As the Tax Court held in *Profl. Ins. Agents of Mich. v. Commissioner*, 78 T.C. 246, 267 (1982), affd. 726 F.2d 1097 (6th Cir. 1984):

Logically, if * * * activities do not contribute to * * * [an organization's tax-exempt purpose] in the context of determining whether an organization qualifies for exemption, then surely these same activities cannot be said to be related to the organization's exempt purpose in the context of the UBTI provisions.

Applying these principles, a homeowners association generally does not promote community welfare if all of the association's facilities are closed to the general public (i.e., closed to nonmembers of the association). See *Flat Top Lake Association, Inc. v. United States*, *supra* at 111–113. It follows that if a homeowners association has one facility that is closed to the general public, then that facility is not substantially related to the promotion of community welfare. The income from that facility is subject to the unrelated business income tax unless an exception applies.

The IRS does not contend that the Association's tax-exempt status should be revoked. It concedes that most of the Association's facilities and services are open to the general public. Its contention is that income from the portion of its facilities not open to the general public (i.e., the beach club and the parking lots) is subject to the unrelated business income tax because the operation of these facilities is not substantially related to the promotion of community welfare. We agree. The parking lots and the beach club are not accessible to the general public.[4] Only Association members and

---

[4] The Association argues for these purposes that its membership is so broad that its membership should be considered the general public and therefore its parking lots and beach club (which are open only to its members and their guests) should be considered open to the general public. But the court in *Flat Top* held that a homeowners association that operates for the exclusive benefit of its members "does not serve a 'community' as that term relates to the broader concept of social welfare." *Flat Top Lake Association, Inc. v. United States*, 868 F.2d 108, 111 (4th Cir. 1989).

their guests may park in the parking lots. Although the beach club allows both Association members and nonmembers to access its food and beverage services and its restrooms, its primary facilities (the swimming pool, gym lockers, and showers) are accessible only to the Association's members. Thus, the operation of the parking lots and the beach club is not substantially related to the purpose of "[promoting] social welfare" within the meaning of section 501(c)(4) because they are not open to the general public. Thus, unless an exception applies, the income attributable to the operation of the parking lots and the beach club is subject to the unrelated business income tax.

## II. *Whether Parking Lot Income Is Rent From Real Property Within the Meaning of Section 512(b)(3)*

Section 512(a) provides that unrelated business taxable income is income earned by a tax-exempt organization from an unrelated trade or business it regularly carries on, subject to the modifications in section 512(b). One of these modifications, in section 512(b)(3)(A)(i), is that "rents from real property" are excluded from unrelated business taxable income. The IRS claims that the income from operating the two parking lots is not rent from real property because of statements in legislative reports and because, it says, a regulation explicitly bars income from operation of a parking lot from qualification for the exception. The Association contends that under the regulation, the income from operating the two parking lots is rent from real property. We agree with the IRS.

When Congress enacted the unrelated business income tax provisions as part of the Revenue Act of 1950, ch. 994, 64 Stat. 906, the House Ways and Means Committee report stated that the provision of the law excluding rents from real property from unrelated business taxable income was intended to exclude income from passive ownership of assets:

The tax applied to unrelated business taxable income does not apply to dividends, interest, royalties (including of course, overriding royalties), rents (other than certain rents on property acquired with borrowed funds), and gains from sales of leased property. Your committee believes that such "passive" income should not be taxed where it is used for exempt purposes because investments producing incomes of these types have long been rec-

ognized as proper for educational and charitable organizations. [H. Rept. 2319, 81st Cong., 2d Sess. 38 (1950), 1950–2 C.B. 380, 409.]

It later stated:

The term "rents from real property" does not include income from the *operation* of a hotel but does include rents derived from a *lease* of the hotel itself. Similarly, income derived from the *operation* of a parking lot is not considered "rents from real property." [*Id.* at 110, 1950–2 C.B. at 459; emphasis added.]

The Senate Finance Committee report also included the language above regarding operation of a hotel and a parking lot. S. Rept. 2375, 81st Cong., 2d Sess. 108 (1950), 1950–2 C.B. 483, 560.

The tax on unrelated business income, as enacted in 1950, did not apply to churches and some other tax-exempt organizations. Revenue Act of 1950, sec. 421(b)(1), 64 Stat. 948. In 1969, the Treasury Department recommended extending the unrelated business income tax to all tax-exempt organizations. U.S. Treasury Dept. Tax Reform Studies and Proposals (Part 1) 26–27 (1969). The Joint Committee staff supported the Treasury Department's recommendation, citing its own research on the scope of churches' unrelated business activities. One of the examples of an unrelated business given by the staff was a church's operation of a parking lot. Staff of Joint Comm. on Taxation, Tax-Exempt Organizations 20–21 (J. Comm. Print 1969). The House Ways and Means Committee report on the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, incorporated the Joint Committee's examples of proliferating church-operated businesses in describing why it was recommending an expansion of the unrelated business income tax:

There is inequity in taxing certain exempt organizations on their "unrelated business income" and not taxing others. It has become apparent that organizations now subject to the provision and those not subject to it are equally apt to engage in unrelated business. For example, numerous business activities of churches have come to the attention of the committee. Some churches are involved in *operating* chains of religious bookstores, hotels, factories, companies leasing business property, radio and TV stations, newspapers, *parking lots*, record companies, groceries, bakeries, cleaners, candy sale businesses, restaurants, etc. * * * [Emphasis added.]

* * * * * * *

The bill in extending the unrelated business income tax to churches provides a period of time * * * for churches to dispose of unrelated business or to spin them off in separate taxable corporations.
    [H. Rept. 91–413 (Part 1), at 47–48 (1969), 1969–3 C.B. 200, 230–231.]

   Similarly, the report of the Senate Finance Committee stated:

In recent years, many of the exempt organizations not now subject to the unrelated business income tax—such as churches, social clubs, fraternal beneficiary societies, etc.—have begun to engage in substantial commercial activity. For example, numerous business activities of churches have come to the attention of the committee. Some churches are engaged in *operating* publishing houses, hotels, factories, radio and TV stations, *parking lots*, newspapers, bakeries, restaurants, etc. Furthermore, it is difficult to justify taxing a university or hospital which runs a public restaurant or hotel or other business and not tax a country club or lodge engaged in similar activity. [S. Rept. 91–552, at 67 (1969), 1969–3 C.B. 423, 467; emphasis added.]

The reports suggest that income from operating a parking lot was not exempt from the unrelated business income tax under any provision. The legislative history stated or implied four times that the operation of parking lots yields unrelated business taxable income and not rent from real property.

   Section 1.512(b)–1(c)(5), Income Tax Regs., provides that income from the operation of a parking lot is not rent from real property. The regulation provides:

Rendering of services. For purposes of this paragraph, payments for the use or occupancy of rooms and other space where services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist camps or tourist homes, motor courts, or motels, or *for the use or occupancy of space in parking lots*, warehouses, or storage garages, does not constitute rent from real property. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such service; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways, and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant. Payments for the use or occupancy of entire private residences or living quarters in duplex or multiple housing units, of offices in any office building, etc., are generally treated as rent from real property. [Emphasis added.]

The Association, in interpreting the above regulation, argues that income from operating a parking lot is rent from real

property unless the services provided by the tax-exempt organization in operating it are "substantial." It states that the services it provides at the lots, i.e., the provision of parking guards to open the lots and to check parking decals, are insubstantial. It compares its level of service to its parking lot customers to the level of service involved in the trash collection mentioned in the regulation. But the test in the regulation for determining whether the services are rendered to the occupant (and therefore disqualify the organization from using the rental exception) is not whether the services provided are substantial, but whether the services are (1) "primarily" for the "convenience" of the occupant and (2) are "other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only." And as to the question of whether the services provided by an operator of a parking lot satisfy this test, the regulation also provides guidance. The first sentence of the regulation lists "the use or occupancy of space in parking lots" as an example of "use or occupancy of rooms and other space where services are also rendered to the occupant". The regulation, as we interpret it, determines that the services provided by an operator of a parking lot (at least a typical parking lot) are primarily for the convenience of the customer and are other than those usually or customarily rendered in connection with the rental of rooms or space for occupancy only. [5] Although this conclusion might not apply to a parking lot that is so unusual that it would not be considered a "parking lot" within the ordinary meaning of the term, there is nothing to suggest that the services the Association provides to its parking lot customers are unusual in this context. Thus, the net income the Association earned from operating the parking lots during the summer months does not constitute rent from real property as defined in section 512(b)(3). The net income is subject to the unrelated business income tax.

In reaching our holdings here, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

---

[5] The lease payments from third-party businesses are rent from real property under the regulation, and thus were properly conceded by the IRS as excludable from unrelated business taxable income, because Ocean Pines did not directly operate the parking lot on the behalf of the third-party businesses.

To reflect the foregoing,

*Decision will be entered under Rule 155.*