**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL LEAGUE OF POSTMASTERS
OF THE UNITED STATES,
Petitioner-Appellant,

v.

No. 95-2646

COMMISSIONER OF THE INTERNAL
REVENUE SERVICE,
Respondent-Appellee.

AMERICAN FARM BUREAU FEDERATION,
Amicus Curiae.

Appeal from the United States Tax Court.
(Tax Ct. No. 93-8032)

Argued: April 3, 1996

Decided: June 14, 1996

Before ERVIN, Circuit Judge, LAY, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit, sitting by
designation, and TRAXLER, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Lay wrote the opinion,
in which Judge Ervin and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** James vanRoden Springer, DICKSTEIN, SHAPIRO &
MORIN, L.L.P., Washington, D.C., for Appellant. Edward T. Perel-

muter, Tax Division, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee. **ON BRIEF:** M. J. Mintz,
Lawrence D. Garr, DICKSTEIN, SHAPIRO & MORIN, L.L.P.,
Washington, D.C., for Appellant. Loretta C. Argrett, Assistant Attor-
ney General, Gary R. Allen, Richard Farber, Tax Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee. John J. Rademacher, General Counsel, AMERICAN
FARM BUREAU FEDERATION, Park Ridge, Illinois; Jerry L.
Oppenheimer, Evan M. Tager, Donald M. Falk, Michael I. Gilman,
MAYER, BROWN & PLATT, Washington, D.C., for Amicus Curiae.

_____

## OPINION

LAY, Senior Circuit Judge:

The National League of Postmasters ("the League") is a tax-exempt
labor organization under 26 U.S.C. § 501(c)(5). The Commissioner
determined deficiencies in the League's federal income taxes from
1987 to 1990 on the basis that dues and service fees the League
received in relation to certain members, known as "League Benefit
Members" ("LBMs"), were not "substantially related" to any of the
League's tax-exempt purposes. See 26 U.S.C. § 513(a). The Tax
Court upheld the Commissioner. We affirm.

Factual Background

In August of 1987, the League formed a new class of membership
called "League Benefit Members" ("LBMs"). The League maintains
that the dues and service charges related to LBMs, unlike a former
class of membership, "Limited Benefit Members," are tax-exempt.[1]

_____

[1] Historically, the League's membership was limited to active and
retired postmasters. In 1978, the League added a new membership cate-
gory, "Limited Benefit Members," open to other active and retired fed-
eral employees. The sole benefit to Limited Benefit Members was
participation in the League's health insurance plan, the Postmaster Bene-
fits Plan, under the Federal Employees Health Benefits Program. This
category of membership raised a substantial amount of revenue for the

2

From 1987 to 1990, LBMs received several benefits, including access to the League's health insurance plan; a quarterly newsletter; certain employment-related group legal services (if the member did not otherwise have access to binding arbitration); and the right to participate in the League's travel, credit card, eyewear, and long-term care insurance programs. At the same time, the League expanded the focus of its legislative and administrative lobbying from issues related solely to postal services to include issues concerning "the overall working conditions and retirement benefits of all Members." J.A. 77-78. In addition, the League provided that the new class of LBMs, who accounted for roughly half of the League's total membership, could elect one member to the League's executive board, otherwise composed of nine active postmasters.[2] The elected LBM representative was also the only LBM delegate out of five hundred total delegates to the League's annual national convention.[3]

_____

League through dues and service fees on the health insurance plan. In the mid-1980s, the Commissioner challenged the exempt status of labor organizations' provision of health insurance to persons who were not otherwise members of the labor organization. See, e.g., American Postal Workers Union v. United States, 925 F.2d 480 (D.C. Cir. 1991) (upholding Commissioner). At that time, the League conceded the taxability of the dues and service fees from its Limited Benefit Members and paid its tax deficiency. The League also abolished the category of Limited Benefit Members in favor of "League Benefit Members" who received an expanded package of benefits.

[2] To accommodate the new LBM board member, the League increased the size of the executive board from nine to ten members and the number of votes required to transact business from six to seven.

[3] The new class of LBMs were not eligible to participate in the League's state branches or its affiliated retiree organizations, through which national delegates were elected and social and professional programs for postmasters were implemented. They also did not receive the Postmasters Advocate, the League's monthly magazine, as a benefit of membership. Furthermore, they were unable to utilize the League's "adverse action counseling," which trained postmasters in resolving personnel-related disputes. The League explains that active postmaster members received these benefits because they paid substantially higher dues than LBMs. The League, however, is not a collective bargaining agent for postmasters or any of its other classes of members.

3

Before the Tax Court, the League stipulated that its activities with respect to the LBMs constituted a "trade or business" and were "regularly carried on" during the years in question. See 26 U.S.C. § 512(a)(1). The Commissioner stipulated that income from the League's activities with respect to the other members, essentially active and retired postmasters, was tax exempt. Thus, the only issue presented in this case is whether the League conducted its activities with respect to LBMs in a manner "substantially related" to the League's tax-exempt purposes such that the income derived from those activities is tax exempt. See 26 U.S.C. § 513(a).

Discussion

An otherwise tax-exempt organization must pay tax on"unrelated business taxable income." 26 U.S.C. § 511(a)(1). Unrelated business taxable income is an organization's gross income, less allowable deductions, produced from (1) any trade or business (2) regularly carried on by the organization (3) which is not substantially related (aside from generating revenue) to the organization's tax-exempt purposes. See 26 U.S.C. §§ 512(a)(1), 513(a); United States v. American Bar Endowment, 477 U.S. 105, 109-10 (1986); United States v. American College of Physicians, 475 U.S. 834, 838-39 (1986).**4** This tax is designed to restrain unfair competition by otherwise tax-exempt organizations engaged in profit-making activities without unnecessarily discouraging benevolent enterprise. Id. at 837-38.

The League's tax-exempt purposes are defined in part by regulation, which provides that a tax-exempt labor organization must have as its object "the betterment of the conditions" of those engaged in labor. See 26 C.F.R. § 1.501(c)(5)-1(a)(2); Morganbesser v. United States, 984 F.2d 560, 562 (2d Cir. 1993). In addition, as the District

_____

**4** Under the regulations, the substantial relationship test is whether income-generating activities have a substantial"causal relationship to the achievement of exempt purposes" or "contribute importantly to the accomplishment of those purposes." 26 C.F.R.§ 1.513-1(d)(2). The regulations further provide that "[w]hether activities productive of gross income contribute importantly to the accomplishment of any purpose for which an organization is granted exemption depends in each case upon the facts and circumstances involved." Id.  (emphasis added).

4

of Columbia Circuit did in <u>American Postal Workers Union v. United States</u>, 925 F.2d 480, 482 (D.C. Cir. 1991), we also look to the League's articles of incorporation, which define the League's purposes as follows:

> <u>Section 1</u>. Provide a vehicle through which members may assist one another in matters connected with their career employment in the United States Postal Service;

> <u>Section 2</u>. Advance the proficiency of personnel in providing postal service promptly, reliably and efficiently to individuals and businesses in all areas of the nation;

> <u>Section 3</u>. Consult with the management of the United States Postal Service on policies which concern the welfare, happiness and morale of employees;

> <u>Section 4</u>. Improve the conditions under which individual members work, having concern for salaries, hours of employment, working environment, adjustment of grievances and labor disputes;

> <u>Section 5</u>. Cooperate with other groups and levels of postal management in the achievement of common goals;

> <u>Section 6</u>. Encourage contact among members in social, operational and professional relationships; and

> <u>Section 7</u>. Engage in any other activity not inconsistent with the laws of the District of Columbia.

J.A. 67-68. The League contends that Section 4 of its statement of purpose--"[i]mprove the conditions under which individual members work, having concern for salaries, hours of employment, working environment, adjustment of grievances and labor disputes"--is sufficiently broad to cover non-postal federal employees. We find, however, that the League's articles, as the League's name suggests, reflect an overriding purpose to improve the working conditions of postmasters, and, to a lesser extent, other postal employees. The statement of

5

purpose fails to provide for the betterment of conditions for all federal employees. It is patently clear that the articles as a whole focus on postmasters and other postal employees. Cf. American Postal Workers, 925 F.2d at 482. Under basic principles of construction, the general words in Section 4 apply only to those of the same class (postal workers) as set forth in the other sections. However, assuming that Section 4 can be read to encompass all federal employee members, and that it thus constitutes a valid tax-exempt purpose, we nonetheless find the League's activities in regard to LBMs not substantially related to any such purpose.**5**

First, we deem it highly dubious that the League's generalized provision of health insurance benefits to federal employee members, including retired federal employees, is substantially related to improving the working conditions of LBMs. The Commissioner has allowed tax-exempt treatment for the provision of health insurance to a labor organization's members. See Rev. Rul. 62-17, 1962-1 C.B. 87, 87-88. In the present case, however, the Tax Court found the provision of health insurance was not substantially related to the League's exempt purposes because the League marketed the health insurance in a commercial manner, much like competitor for-profit health plans, and the health plan was available to retired federal employees who had not been members of the League prior to retirement. In such circumstances, the Tax Court found the health benefits were not substantially related to improving the working conditions of LBMs.

_____

**5** The League argued to the Tax Court that its activities in regard to LBMs were also substantially related to its sixth stated purpose: "Encourage contact among members in social, operational and professional relationships[.]" The Tax Court found, however, that the League "did not attempt to encourage contact, whether for social, operational, or professional purposes, among or with LBMs during the years at issue." This finding was based in large part on the fact that LBMs were excluded from the League's state chapters and were not encouraged to attend the League's national convention. The League does not press this argument on appeal, and we find, as did the Tax Court, that Section 6 of the League's statement of purpose provides no basis for sustaining the League's exempt status for its income derived from the dues and service charges related to LBMs.

Moreover, it is now clear that the "provision of insurance benefits to persons who are not members in any other sense cannot be substantially related to a [labor organization's] tax-exempt purposes." American Postal Workers, 925 F.2d at 483. Accord National Ass'n of Postal Supervisors v. United States, 944 F.2d 859, 861 (Fed. Cir. 1991). In distinguishing American Postal Workers and Postal Supervisors, the League contends the overall bundle of benefits provided to LBMs--group legal services, communications, lobbying, and voting rights--made them bona fide League members. As such, the League argues, their dues should be tax-exempt. We disagree.

Although it is possible that LBMs joined the League for reasons other than to obtain access to the League's health insurance plan, the League failed to show how many LBMs opted not to participate in the League's health plan. In light of the history of LBMs, as the offspring of the Limited Benefit Members whose sole benefit was the League's health plan, see note 1, supra, it was incumbent upon the League to show that LBMs acted as bona fide League members in some manner more substantial than as health benefit purchasers. Cf. Helvering v. Taylor, 293 U.S. 507, 515 (1935) (burden of proof on petitioner to show invalidity of Commissioner's determination). Without such a showing by the League, the Commissioner could reasonably suspect that the League was evading the Commissioner's earlier decision to tax the dues and service fees of so-called "members" whose only membership benefit was health insurance. The League's failure to show the number of LBMs who did not obtain the League's health benefits belies the notion that federal employees joined the League in order to obtain the League's other benefits or out of affinity for the postmasters.

Moreover, we think the Tax Court properly found the other benefits in the League's bundle of benefits were not substantially related to the League's tax-exempt purposes of improving the working conditions of the League's members.**6** First, the Tax Court found that

_____

**6** The Commissioner acknowledges that the League could have established that a portion of the dues of LBMs was substantially related to a tax-exempt purpose, such as the legal services contract, and thereby immunized that portion of the dues from taxation. Appellee's Br. at 24. We agree with the Commissioner that the League failed to meet its burden of proof in this regard, however, and thus we do not reverse the Tax Court on this basis.

7

although some LBMs obtained assistance in employment-related disputes through the group legal services contract, it was of no value to many LBMs who either were retired, and thus had no need for employment-related legal assistance, or were covered by binding arbitration agreements, and thus were ineligible for the League's group legal services. Second, the Tax Court found the League's newsletter for LBMs was used primarily as an advertisement for the health and other commercial benefits available to LBMs, rather than as a means to communicate important labor news to federal employee members. Cf. Illinois Ass'n of Professional Ins. Agents v. Commissioner, 801 F.2d 987, 995 (7th Cir. 1986) (characterizing materials as taxable advertisements rather than tax-exempt educational material). Third, the Tax Court found any lobbying on issues of concern to federal employees was either incidental to its lobbying efforts on behalf of postmasters or otherwise too generalized to constitute a substantial relationship to the working conditions of LBMs. See American Postal Workers, 925 F.2d at 482-83.[7] Fourth, the Tax Court found the limited voting rights provided to the LBMs were effectively diluted by other changes in voting which maintained the power of postmasters to control the League's agenda. See note 2, supra. Upon our review of the record, we find no error in the Tax Court's findings.

The League argues, however, that the Tax Court erred by examining whether its activities actually improved the working conditions of LBMs in some tangible, quantitative manner rather than whether its activities were designed to improve the working conditions of LBMs or were consistent with such a purpose. Under the regulations, a tax-

_____

[7] The League argues generalized lobbying on behalf of federal employees is nonetheless directed toward the improvement of the working conditions of LBMs and thus should support the tax-exempt status of the dues of LBMs. It is true that federal employees could join a labor organization to promote such generalized lobbying efforts. On this record, however, there is no showing that such lobbying was substantially related to the dues paid by LBMs or a substantial reason for League membership on the part of LBMs. Moreover, the League could have readily established a class of members to support the League's lobbying efforts without the attendant health and other commercial benefits. Under these circumstances, generalized lobbying cannot support the tax-exempt status of the dues of LBMs.

8

payer must show that an organization's income-generating activities have a substantial "causal relationship to the <u>achievement</u> of exempt purposes" or "contribute importantly to the <u>accomplishment</u> of those purposes." 26 C.F.R. § 1.513-1(d)(2) (emphasis added). Thus, to the extent that the Tax Court looked for evidence of actual improvement in the working conditions of LBMs, we think such an inquiry was proper. As we read the Tax Court's opinion, however, the Tax Court examined whether the League's conduct of its activities in regard to LBMs evinced a primary intention on the League's part of raising revenue, making its income taxable, or of improving the working conditions of LBMs, making its income tax exempt. <u>See American College of Physicians</u>, 475 U.S. at 848-49; <u>Independent Ins. Agents v. Commissioner</u>, 998 F.2d 898, 902 (11th Cir. 1993). Because some of the benefits, such as the group legal services contract, had no potential to improve the working conditions of many LBMs, the Tax Court properly concluded the League failed to show it conducted its activities in regard to LBMs in a manner substantially related to its tax-exempt purposes.

Under these circumstances, the Tax Court properly found the dues of LBMs and related service charges not substantially related to any of the League's tax-exempt purposes, and we affirm the Tax Court's decision.

<u>AFFIRMED</u>

9