**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

OCEAN PINES ASSOCIATION, INC.,

*Petitioner-Appellant,*

v.

COMMISSIONER OF INTERNAL
REVENUE,

*Respondent-Appellee.*

No. 11-1029

Appeal from the United States Tax Court.
(Tax Ct. No. 08-5127)

Argued: January 25, 2012

Decided: March 2, 2012

Before MOTZ, Circuit Judge, Thomas D. SCHROEDER,
United States District Judge for the Middle District of
North Carolina, sitting by designation, and
J. Michelle CHILDS, United States District Judge
for the District of South Carolina,
sitting by designation.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Schroeder and Judge Childs joined.

## COUNSEL

**ARGUED:** Jerrold A. Thrope, GORDON, FEINBLATT, ROTHMAN, HOFFBERGER & HOLLANDER, Baltimore, Maryland, for Appellant. Teresa Thomas Milton, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Steven M. Gevarter, GORDON, FEINBLATT, ROTHMAN, HOFFBERGER & HOL-LANDER, Baltimore, Maryland, for Appellant. Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General, Bruce R. Ellisen, Tax Division, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellee.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

The Tax Court determined that the net income from two parking lots and a beach club owned by a tax-exempt association constitutes "unrelated business taxable income." The association appeals. Because the income derived from the parking lots and beach club is not "substantially related" to the association's tax-exempt purpose, we affirm.

I.

Before the Tax Court, the parties stipulated to the facts. We recite only those facts relevant to the legal issues before us.

Ocean Pines Association, Inc. (the "Association") is a non-stock corporation organized and incorporated in Maryland. It oversees a subdivision of more than thirty-five hundred acres in Berlin, Maryland, known as Ocean Pines. The Association is exempt from federal income taxation as an organization "not organized for profit but operated exclusively for the promotion of social welfare" pursuant to 26 U.S.C. § 501(c)(4)(A).

The owners of residential property within Ocean Pines comprise the membership of the Association. The 2000 Census lists the population of Ocean Pines as 10,496. The Association enforces zoning restrictions and maintains bulkheads, roadways, and parking lots in Ocean Pines. The Association also provides within the subdivision two volunteer fire stations and a police force, and operates recreational facilities, including five swimming pools, an 18-hole golf course, two marinas, a yacht club, tennis courts, a soccer field, and other parks and trails. In addition, the Association provides within Ocean Pines various seminars, camps, sporting leagues, and aquatic programs. All of these facilities and programs are open to members and nonmembers, though some are only available for a fee. Parking within Ocean Pines is free and open to members and nonmembers alike.

The Association also owns and maintains two parking lots and an ocean-front beach club approximately eight miles from the Ocean Pines subdivision, in Ocean City, Maryland. The Association operates these facilities in the seasonal summer months, *i.e.*, between Memorial Day weekend and Labor Day weekend. During the day, the Association makes the parking lots — which contain approximately three hundred parking spaces—available only to members of the Association. Members wishing to take advantage of the parking lots must purchase week-long or season-long permits for an additional fee. Nonmembers cannot purchase permits. The Association leases the parking lots to third-parties during the non-seasonal months and after 4 p.m. during the summer months. The beach club, known as the Ocean Pines Beach Club, has restrooms and food and beverage services that are open to the general public. But, its swimming pool, lockers, and showers are only available to Association members and their guests.

In tax years 2003 and 2004, the Association's revenue from the parking lots totaled $232,089 and $266,487, respectively. These amounts include third-party payments of $61,024 in 2003 and $64,692 in 2004 to lease the parking lots in the eve-

ning hours and during the off-season. The Association incurred expenses related to the operation of the parking lots totaling $39,092 in 2003 and $21,939 in 2004. The Association incurred net losses from its beach club of $20,486 in 2003 and $1,741 in 2004. Thus, the Association's net income from the parking lots and beach club, excluding income received from leases to third parties,[1] totaled $111,487 in 2003 and $178,115 in 2004.

In 2007, the Commissioner issued a notice of deficiency to the Association, determining that the Association owed taxes on this net income. The Association petitioned for a redetermination of the deficiencies. The parties stipulated to facts and settled issues. Thus, they presented only two questions to the Tax Court: (1) whether the Association's operation of the parking lots and beach club was substantially related to the Association's tax-exempt purpose, and (2) whether the revenue received from Association members for parking on the lots was exempt from the unrelated business income tax as rent from real property. The Tax Court ruled in favor of the Commissioner on both questions. The Tax Court concluded that "the operation of the beach club and the parking lots does not promote community welfare because they are not accessible to nonmembers[,] that is, the general public"; and that the revenue from the parking passes sold to Association members was not rent from real property. On appeal, the Association challenges only the first determination—that net income from the parking lots and beach club was taxable as trade or business income unrelated to the Association's tax-exempt purpose.

---

[1]Prior to the Tax Court's decision in this case, the Commissioner conceded that "the revenue received by the Association from the leasing of its Ocean City parking lots to third parties in the evening hours and during the off-season is excepted from [26 U.S.C.] § 511 unrelated business taxable income because it satisfies the § 512(b) exception to unrelated business income for the rent from real property."

"We review decisions of the United States Tax Court on the same basis as decisions in civil bench trials in United States district courts." *Waterman v. Comm'r*, 179 F.3d 123, 126 (4th Cir. 1999). Because the Tax Court decision rests on stipulated facts, "we are only presented with disputed legal issues" and, therefore, review the case de novo. *Pfister v. Comm'r*, 359 F.3d 352, 353 (4th Cir. 2004).

II.

We first outline the controlling legal principles governing this dispute.

An organization generally exempt from income taxes under § 501(c)(4), like the Association, must pay income tax on its "unrelated business taxable income." 26 U.S.C. § 511(a)(1). "Unrelated business taxable income" is "the gross income derived by any organization from any unrelated trade or business . . . regularly carried on by it," subject to certain allowable deductions. *Id.* § 512(a)(1).

The Internal Revenue Code defines an "unrelated trade or business" as any trade or business that is not "substantially related . . . to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501." *Id.* § 513(a). The Code thus establishes a three-part test to determine whether income from an activity of a nonprofit organization is taxable as unrelated trade or business income: the activity is taxable if it is (1) a trade or business, (2) regularly carried on, and (3) not substantially related to the organization's tax-exempt purpose. *See United States v. Am. Bar Endowment*, 477 U.S. 105, 109-10 (1986); 26 C.F.R. § 1.513-1(a).

The Association stipulated that the parking lots and beach club are (1) a trade or business (2) that is regularly carried on. Thus, only the third prong is at issue in this case. With respect

to that prong, Treasury regulations explain that a "substantially related" trade or business "has causal relationship to the achievement of exempt purposes" and "must contribute importantly to the accomplishment of those purposes." *Id.* § 1.513-1(d)(2).

The taxation of income unrelated to an organization's tax-exempt purpose dates back to the Revenue Act of 1950. Congress enacted those provisions "in response to perceived abuses of the tax laws by tax-exempt organizations that engaged in profit-making activities." *United States v. Am. Coll. of Physicians*, 475 U.S. 834, 837 (1986). Rather than "forc[ing] exempt organizations to abandon all commercial ventures," *id.* at 838, Congress imposed a tax on "unrelated business taxable income" that is not "substantially related" to the organization's tax-exempt purpose, 26 U.S.C. § 511(a)(1); *id.* § 513(a); *Am. Coll. of Physicians*, 475 U.S. at 838. Thus, while a tax-exempt organization may in certain circumstances operate a trade or business that does not contribute to its tax-exempt purpose, the benefits of its "tax exemption is limited by other Code provisions . . . that impose a tax on the 'unrelated business taxable income' of [that] otherwise tax-exempt organization[]." *La. Credit Union League v. United States*, 693 F.2d 525, 529 (5th Cir. 1982).

The parties have pointed to no case that has addressed the scope of the unrelated business income tax in the context of an association tax-exempt pursuant to § 501(c)(4), and we have found none. But the plain language of the statute states that the taxation of a tax-exempt entity's business income clearly depends on whether that business is "substantially related" to the entity's tax-exempt purpose. *See* 26 U.S.C. § 513(a). Thus, in determining whether the business income is "substantially related" to the Association's tax-exempt purposes, a court must first determine what that tax-exempt purpose is. *See* 26 C.F.R. § 1.513-1(d)(1) (noting that the "substantially related" requirement "necessitates an examination of the relationship between the business activities which

generate the particular income in question . . . and the accomplishment of the organization's exempt purposes").

Section 501(c)(4) provides a tax exemption for "[c]ivic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare." 26 U.S.C. § 501(c)(4)(A). Treasury regulations clarify that "[a]n organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(i). The regulations add that such an organization is "operated primarily for the purpose of bringing about civic betterments and social improvements." *Id.*

Accordingly, we have affirmed denial of a § 501(c)(4) exemption to a private subdivision that limited use of its facilities to individuals who owned property within the development and their guests. *Flat Top Lake Ass'n v. United States*, 868 F.2d 108, 109-10 (4th Cir. 1989). We reasoned that "an organization that operates for the exclusive benefit of its members does not serve a 'community' as that term relates to the broader concept of social welfare." *Id.* at 111. Because "Congress believed that an organization cannot serve social welfare if it denies its benefits to the general public," we held that "a true 'community' functions within a broader national fabric." *Id.* at 111-12. Similarly, we have reversed the judgment of the Tax Court that an organization operating a low-income housing development only for veterans was entitled to tax exemption as a social welfare organization. *Comm'r v. Lake Forest, Inc.*, 305 F.2d 814, 816 (4th Cir. 1962) (construing § 101(8) of the Internal Revenue Code, the predecessor to § 501(c)(4)). We so held because the organization did not benefit the "public at large" nor was its contribution "of a public character." *Id.* at 818.

In sum, to avoid taxation on income derived from a trade or business, a § 501(c)(4) organization must demonstrate that

its trade or business is "substantially related"—that is, "caus-al[ly]" advances and "contributes importantly"—to the organi-zation's promotion of "social welfare." 26 U.S.C. § 501(c)(4)(A); *id.* § 513(a); 26 C.F.R. § 1.513-1(d)(2). An organization promotes "social welfare" when it promotes "the common good and general welfare of the people of the com-munity," a phrase we have held refers to the "general public." *Flat Top*, 868 F.2d at 111; *see* 26 C.F.R. § 1.501(c)(4)-1(a)(2)(i).[2] Therefore, to be exempt from taxation, the trade or business undertaken by a tax-exempt 501(c)(4) organization must itself causally advance or contribute importantly to the organization's promotion of the common good and welfare of the general public.

With these principles in mind, we turn to the case at hand.

III.

The Association's parking lots—which are open during summer days only to Association members—and its beach club—which permits public access only to restrooms and food services—do not contribute to the social welfare of the gen-eral public. Rather, the parking lots and beach club serve only

---

[2]Although Revenue Rulings receive "considerably less deference" than "properly promulgated regulations," *Dominion Res., Inc. v. United States*, 219 F.3d 359, 366 (4th Cir. 2000), we note that the IRS has taken the same position in its Revenue Rulings. Interpreting § 501(c)(4) in the context of homeowners' associations, the IRS has concluded that "the common areas or facilities [that a homeowners' association] owns and maintains must be for the use and enjoyment of the general public" in order to qualify for tax exemption. Rev. Rul. 74-99, 1974-1 C.B. 131. Thus, a homeowners' asso-ciation derives its tax exemption, *inter alia*, from its "ownership and main-tenance . . . of such areas as roadways and parklands, sidewalks and street lights, access to, or the use and enjoyment of which is extended to mem-bers of the general public, as distinguished from controlled use or access restricted to the members of the homeowners' association." *Id.*; *see also* Rev. Rul. 80-63, 1980-1 C.B. 116 (emphasizing that serving a community requires a homeowners' association to maintain common areas and facili-ties "for the use and enjoyment of the general public").

the private interests of the Association members. Unlike the roadways and bulkheads within the Ocean Pines community, which provide needed quasi-governmental services and civic betterments to anyone passing through Ocean Pines, the parking lots and beach club benefit only those who own property in the Ocean Pines community and their guests. In sum, the parking lots and beach club provide "a private refuge for those who would live apart," rather than "a community within the contemplation of section 501(c)(4)." *Flat Top*, 868 F.2d at 113.

Indeed, the Association's excellent counsel conceded at oral argument that the parking lots and beach club "obviously" do not benefit the general public. The Association insists, however, that income derived from these facilities nevertheless should escape taxation as income "substantially related" to the Association's tax-exempt purpose. The Association offers three arguments in support of this contention; we address each in turn.

## A.

First, the Association argues that the legal standard for determining whether trade or business income is taxed as an unrelated business under 26 U.S.C. §§ 511-513 differs from the standard for determining whether an organization is entitled to § 501(c)(4) tax exemption. Thus, it contends that even if the parking lots and beach club would not be entitled to § 501(c)(4) tax-exempt status themselves, these facilities are nonetheless "substantially related" to the Association's § 501(c)(4) tax-exempt purpose and are therefore not taxable under § 511.

The fundamental difficulty with this argument is that, to be "substantially related," the parking lots and beach club must have a "causal relationship" and "contribute importantly to the accomplishment" of the tax-exempt purpose of the Association. 26 C.F.R. § 1.513-1(d)(2). As we explained in *Flat Top*

and *Lake Forest*, facilities that do not permit access to the general public—like the parking lots and beach club—simply do not promote "social welfare." Thus, if the parking lots and beach club do not promote "social welfare," then surely these facilities do not contribute importantly or causally advance the Association's accomplishment of that purpose. *See Prof'l Ins. Agents of Mich. v. Comm'r*, 78 T.C. 246, 267 (1982), *aff'd*, 726 F.2d 1097 (6th Cir. 1984).

### B.

Second, the Association contends that "social welfare" must be interpreted through the lens of the Association's charter, which aims to promote the community welfare of the Association's members rather than that of the general public. Appellant's Br. at 29; Reply Br. at 1-5.[3] The Association argues that the parking lots and beach club advance "the Association's purpose 'to further and promote the community

---

[3]For this argument, the Association relies not on § 501(c)(4) cases, but on those involving § 501(c)(5) and § 501(c)(6). *See Nat'l League of Post-masters of the U.S. v. Comm'r*, 86 F.3d 59, 62 (4th Cir. 1996); *Prof'l Ins. Agents of Mich. v. Comm'r*, 726 F.2d 1097, 1101 (6th Cir. 1984). While § 501(c)(4) provides tax exemption for organizations, like the Association, that promote "social welfare," § 501(c)(5) and § 501(c)(6) provide tax exemption for organizations that benefit, *inter alia*, specific labor and agricultural organizations, business leagues, chambers of commerce, and professional football leagues. In the latter cases, it makes sense to look to an organization's charter to determine the particular group that the organization intends to benefit. For instance, in *Postmasters*, it was appropriate for the court to look to the organization's articles of incorporation because the Code and Treasury regulations do not define the exempt purposes of a labor organization. 86 F.3d at 62 (citing *Am. Postal Workers Union v. United States*, 925 F.2d 480, 482 (D.C. Cir. 1991) ("[N]othing in the Treasury Regulations or any other authoritative source defin[ed] the exempt purposes of a labor organization.")). In contrast, the Treasury regulations speak clearly to the "social welfare" purpose necessary for tax exemption for § 501(c)(4) organizations, like the Association. The regulations require that a § 501(c)(4) organization (regardless of any limits in its charter) promote "the common good and general welfare of the people of the community." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(i).

welfare of property owners' in the Ocean Pines residential community." Appellant's Br. at 8.

The problem with this argument is that an Association's charter cannot trump the requirements of the Tax Code. The plain language of § 513(a) defines an "unrelated trade or business" as one not "substantially related . . . to the exercise or performance by such organization of its . . . *purpose or function constituting the basis for its exemption under section 501*." 26 U.S.C. § 513(a) (emphasis added); *see also* 9 Mertens Law of Fed. Income Tax'n § 34:138 ("The word 'unrelated' generally means unrelated to the *exempt functions* of the organization." (emphasis added)).

Notwithstanding the Association's charter, the purpose that constitutes the basis of the Association's exemption under § 501(c)(4) is its promotion of "social welfare" as defined by the statute and regulations. An organization cannot obtain a broader tax exemption than the Code permits by redefining the basis for its exemption through its charter.[4]

## C.

Third, the Association argues that Congress's purpose in enacting the unrelated business income tax was to avoid unfair competition with private enterprise, and that a rule requiring a business operated by a 501(c)(4) organization to be open to the general public in order to avoid taxation would frustrate that purpose. Appellant's Br. at 23-24 (citing *Am. Bar Endowment*, 477 U.S. at 114). The Association reasons that facilities open to the general public are more likely to

---

[4] The Association also suggests that its membership "is large enough to be coextensive with the public," and therefore, "any activity open to members . . . would be open to the equivalent of the general public." Reply Br. at 8 n.5. That simply is not the case. The parking lots and beach club are located in Ocean City, eight miles from Ocean Pines itself. Many thousands of people flock to Ocean City beaches in the summer, considerably outnumbering the 10,496 Ocean Pines residents and their guests.

compete with private enterprise than facilities limited only to Association members. *Id.*

In *Carolinas Farm & Power Equipment Dealers Ass'n v. United States*, we considered a similar argument in the context of whether the income-generating activity of a tax-exempt association was "a trade or business" for the purpose of the unrelated business income tax. 699 F.2d 167, 169-70 (4th Cir. 1983). The association in that case argued that its income-generating activity was not a trade or business because it did not unfairly compete with taxpaying enterprises. *Id.* at 169. While we recognized that legislative history indicated that "Congress's primary intent in enacting [the unrelated business income tax] was to avoid endowing tax-exempt organizations with an unfair competitive advantage," we nevertheless rejected the association's argument. *Id.* 169-70. We held that there was "no need to look to legislative history where . . . the language of a statute [was] quite clear." *Id.* at 170. Instead, we looked to "the plain language" of § 513(c), which only required a trade or business to have a "profit motive," without any mention of unfair competition with private enterprise. *Id.*

The plain language of the statute and regulations speak with equal clarity here. The Association has stipulated that the only question before us is whether the parking lots and beach club are "substantially related" to the Association's tax-exempt purpose. *See* 26 U.S.C. § 513(a). This inquiry is entirely unrelated to the possible unfair competitive advantage of the Association's parking lots and beach club, and nothing in the statute or regulations suggests that such an inquiry would be appropriate in this context. Moreover, adopting the Association's argument would be especially inappropriate here because it would contravene the purpose of § 501(c)(4), which requires that an organization promote "the common good and general welfare" of the general public. 26 C.F.R. § 1.501(c)(4)-1(a)(2)(i); *see also Flat Top*, 868 F.2d at 111.

* * *

In sum, the net income derived by the Association from its parking lots and beach club benefits the private interests of the Association members rather than the general public. That income therefore is not "substantially related" to the Association's purpose of promoting social welfare, but rather is taxable as "unrelated business taxable income" under §§ 511-513.

## IV.

For the foregoing reasons, the judgment of the Tax Court is

*AFFIRMED*.